IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAMES L. WALKER-EL, 22334-175 | § |
| | § |
| v. | §  No. 3:10-CV-368-M |
| | § |
| TWYLA BARNETT | § |

## AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The Court hereby files its Amended Findings, Conclusions, and Recommendation to correct typographical errors.

The District Court referred this case to the United States Magistrate Judge for pretrial management. Before the Court for consideration is the Motion for Summary Judgment ("Motion," doc. 21) of Defendant Twyla Barnett ("Defendant"). Plaintiff James L. Walker-El ("Plaintiff") has not filed a timely response to the Motion. After considering the summary judgment record, the Court finds that based on the defense of qualified immunity, Defendant is entitled to judgment as a matter of law. Accordingly, the Court recommends that the District Court grant Defendant's motion for summary judgment (doc. 21).

### Standard of Review

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with

evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgement is not appropriate. *Id.* at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.']" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Plaintiff's lack of response to Defendant's Motion means that Plaintiff has not designated specific facts showing that there is a genuine issue for trial. *Bookman v. Shubzda,* 945 F. Supp. 999, 1002 (N.D. Tex. 1996). Although Plaintiff's failure to respond does not permit the Court to enter a "default" summary judgment, the Court is allowed to accept Defendant's evidence as undisputed. *Eversley v. Mbank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988); *see also Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (holding a party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports their claim). Accordingly, this Court accepts Defendant's evidentiary assertions as undisputed. *See Ragas,* 136 F.3d at 458 (noting the court does not have the duty to sift through the

record in search of evidence to support a party's opposition to summary judgment); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992) (same).

## **Analysis**

Plaintiff alleges that while he was an inmate in the Dallas County Jail, Defendant, a Dallas County Jail Health staff L.V.N., acted with deliberate indifference in response to Plaintiff's complaints of pain on November 28, 2009. Defendant raises the defense of qualified immunity.

A government employee may assert the affirmative defense of qualified immunity to a suit for a civil rights violation under § 1983. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages--to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Immunity questions should be resolved at the earliest possible stage in the litigation because qualified immunity extends to immunity from suit, not merely immunity from liability. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A court considering whether a defendant is entitled to qualified immunity conducts a two-pronged inquiry. One prong entails a court's consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan,* ___ U.S. ___, 129 S. Ct. 808, 818 (2009). The other prong requires a court to determine within the specific context of the case whether the violated constitutional right was clearly established at the time in question. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. The court has discretion to decide which of the two prongs to address first based upon the circumstances of the case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and the clearly established question in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410. Current law applies to the constitutional violation, but the law at the time of the incident applies to the clearly established prong; therefore, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

Although qualified immunity is normally an affirmative defense, the plaintiff has the burden to negate the defense once it has been properly raised. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001). This done, the burden shifts to the plaintiff to rebut the qualified immunity defense. *Id*. In this case, Defendant properly raised the issue of her qualified immunity, therefore, the burden of negating that defense lies with Plaintiff, even on summary judgment. *See Id.* at 490.

**Deliberate Indifference to Serious Medical Needs**

"A claim for relief under [42 U.S.C.] § 1983 must allege the deprivation of a right secured by the Constitution or laws of the United States by a defendant acting under color of state law." *Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002). As an employee of a state agency, Defendant was acting under the color of state law. To state a claim for deprivation of medical care, Plaintiff must show that Defendant's actions or omissions were deliberately indifferent to Plaintiff's

4

medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). Deliberate indifference occurs when the state actor is aware of and disregards a serious medical condition of the plaintiff. *Farmer*, 511 U.S. at 837. In addition, the state actor must be aware of facts "from which the inference could be drawn that a substantial risk of harm exists," and the state actor must also draw such an inference. *Id.* The Court will first consider whether Plaintiff has shown that Defendant violated any of his constitutional rights.

As stated, Plaintiff claims that Defendant was indifferent to his complaints of pain and his need for health care on November 28, 2009. Defendant's Affidavit and the Dallas County Jail medical records show that Defendant functioned primarily as a "medication nurse," dispensing medications to inmates such as Plaintiff on regular medication rounds during the day shift, 6:00 a.m. to 6:30 p.m. She also performed other tasks, such as taking vital signs, when ordered to do so by physicians, nurse practitioners, or physician assistants. Occasionally, when she was in the Infirmary (Medical Ward) and available to do so, she would receive and deal with reports of inmate medical complaints communicated through a Detention Service Officer ("DSO"). All of Defendant's involvement in the care and treatment of Plaintiff was in the course and scope of her employment with the Dallas County Hospital District's Jail Health Program.

Plaintiff was admitted to the jail on October 4, 2009, and was housed in the Third Floor West Tower Medical Ward, or Infirmary. (App. 0007, 0285.) Plaintiff used a wheelchair to ambulate and had wheelchair access to restrooms and a low bed. (App. 0007, 0009, 0285.) Upon admission, Plaintiff's health conditions were assessed as: Chronic Leg Pain, Bipolar, and Hypertension. (App. 0009.) At intake, the nurse recorded his blood pressure as 148/87, which is above normal. (App.

5

003). He also reported chest pain, but a physician's assistant assessed it as "not cardiac." (App. 005). The physician's assistant ordered that Plaintiff's vital signs be checked twice a day at first to assess the efficacy of the blood pressure medication that he was receiving daily for his chronic hypertension. (App. 0007). Plaintiff was assessed as having "Borderline HTN, stable." (App. 0022). His blood pressure was monitored two and sometimes three times a day from October 4, 2009 - October 14, 2009, and then periodically. (App. 284).

Defendant's first involvement with Plaintiff was at 1:05 p.m. on November 10, 2009, when she dispensed his prescriptions to him during her medication rounds. (App. 0148). The prescribed drugs were: (1) Atenolol, a beta-blocker that the doctor prescribed for management of Plaintiff's high blood pressure; (2) Hycodone, a narcotic pain reliever that the doctor prescribed for Plaintiff's complaints of chronic pain to his back and legs from an automobile accident eight years earlier (App. 0003, 0021-23); and (3) Diphenhydramine (Benedryl), that the doctor prescribed for seasonal allergies (App. 0021-23). Defendant next dispensed those same three medications to him during morning medication rounds on November 12, 2009 (App. 0149); November 19, 2009 (App. 0155); November 23, 2009 (App. 0160); and November 24, 2009 (App. 0161)).

On November 28, 2009, the date Plaintiff alleges Defendant violated one of his constitutional rights by deliberate indifference to his complaints of pain and his need for health care, Defendant dispensed Plaintiff his usual regular morning medications first at 10:05 a.m., during her morning rounds. (Tr. 285). In the early afternoon, while Defendant was working in the Infirmary, she answered a phone call from a DSO who said that Plaintiff was complaining of pain. (*Id*., App. 32). Defendant reviewed Plaintiff's current health information and went to see him. Plaintiff described his pain as in his shoulders and back. (*Id*.). Defendant assessed that his condition was stable but

6

decided that he might need his next pain medication early. (*Id*.). At 1:40 p.m., Defendant gave Plaintiff his evening dose of pain medication, documented his complaints of pain, and also recorded her actions. (*Id*., App. 0032). Defendant planned to follow up with Plaintiff after 30 minutes to see if the pain medication had helped. (App. 286). Her plan was delayed somewhat by the shift change. (*Id*.). After the shift change, when a new DSO called to say that Plaintiff was again complaining of pain, Defendant instructed the DSO to bring Plaintiff to the Infirmary. (*Id*.). Plaintiff complained of pain in his lower back and kidney area radiating up to his shoulders and down to his hip area. He appeared to be visibly shaking, and said he could not produce any urine when Defendant asked him for a sample for dipstick urinalysis. Plaintiff's blood pressure was 240/117 at 3:07 p.m. (App. 275). At 3:12, it was 248/130. (*Id*). Defendant observed that his condition was different from her earlier check-up and assessed that his symptoms could be related to hypertension. (*Id*.). Defendant contacted the doctor who was on call for the Infirmary, Dr. Laxminarayan ("Dr. Lax"), and reported Plaintiff's change of condition. Dr. Lax prescribed two additional medications to treat the hypertension. (App. 0037). Defendant was concerned that the medications might not be sufficient and asked Dr. Lax to come examine Plaintiff at the Infirmary. (App. 0287). Dr. Lax asked instead that Defendant have Plaintiff brought to the Medicine Assessment Program ("MAP"). (*Id*.). However, Defendant told Dr. Lax that they should not delay the examination by waiting for a DSO to come and take Plaintiff to the MAP. (App. 0287). Dr. Lax came to the Infirmary promptly, evaluated Plaintiff, and ordered him transferred to the Parkland Memorial Hospital Emergency Department by ambulance for further assessment and treatment. (App. 0036). Plaintiff was taken by ambulance to the hospital. (*Id*.).

This Court now addresses whether Defendant has pointed to the lack of evidence that she violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. "A claim for relief under [42 U.S.C.] § 1983 must allege the deprivation of a right secured by the Constitution or laws of the United States by a defendant acting under color of state law." *Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002). As an employee of a state agency, Defendant was acting under color of state law. A prison official's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.[1] *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999)*; Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S.C. 285, 292, 50 L.Ed.2d 251 (1972).[2] The appropriate test for deliberate indifference is subjective recklessness, as used in the criminal-law sense. *Farmer v. Brennan*, 511 U.S. 825, 838-40, 114 S. Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). The legal conclusion of deliberate indifference must rest on facts clearly evincing wanton[3] actions

---

[1] The Eighth Amendment provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. U.S. CONST. amend VIII.

[2] Examples of deliberate indifference noted in *Estelle* include *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (prison surgeon discarded the severed portion of inmate's ear in front of him and stitched the stump, explaining to the inmate that he did not need his ear) and *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir.1970) (prison doctor refused to administer prescribed pain killer and rendered inmate's leg surgery unsuccessful by requiring the inmate to stand in violation of contrary instructions from his surgeon). *Estelle*, 429 U.S. at 105 n.10.

[3] In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the court approved the following definition of wanton:

> Wanton means reckless--without regard to the rights of others.... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure." 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted).

on the defendant's part. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Evidence of sick call requests, examinations, diagnoses, and medications may rebut an inmate's claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). *See Varnado v. Lynaugh*, 920 F.3d 320, 321 (5th Cir. 1991); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). An inmate's disagreement with the kind of medical treatment that he has received is insufficient as a matter of law to state an Eighth Amendment violation. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Federal courts will not inquire into the adequacy or sufficiency of medical care of state inmates unless prison officials appear to have abused the broad discretion which they possess in this area. *Haskew v. Wainwright*, 429 F.2d 525, 526 (5th Cir. 1970).

Plaintiff does not deny that he received medical treatment; rather, he complains that Defendant's treatment of him was inappropriate and that she did not act quickly enough. It is undisputed that he had been seen by the nurses and doctors, had been given medication, and that his medical condition was being monitored from the time of his intake into the jail. Plaintiff's allegations address the nature of the treatment he received, rather than any deliberate refusal on the part of Defendant to provide care. Deliberate indifference occurs when the state actor is aware of and disregards a serious medical condition of the plaintiff. *Farmer*, 511 U.S. at 837. In addition, the state actor must be aware of facts "from which the inference could be drawn that a substantial risk of harm exists," and the state actor must also draw such an inference. *Id*.

Defendant's evidence is undisputed; Plaintiff has not pointed to evidence that controverts it. The evidence supports Defendant's claim that she did not disregard Plaintiff's serious medical

condition. Based on Plaintiff's medical records (App. 0001-0278) and Defendant's affidavit (App. 0279-0290), Defendant worked diligently on Plaintiff's behalf. Additionally, Defendant's actions decreased the risk of harm to Plaintiff. If Defendant had followed Dr. Lax's request to have Plaintiff transferred to the MAP, rather than insisting that Dr. Lax come to the Infirmary, Plaintiff's transportation to the hospital would have been delayed. Therefore, contrary to Plaintiff's allegations, Defendant was not deliberately indifferent to his medical needs, and she is entitled to qualified immunity.[4] Since Plaintiff has failed to establish a genuine issue of material fact as to essential elements of his claim, Defendant's Motion should be granted. *See Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir. 1991).

SIGNED, January 12, 2011.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not address the second prong of the qualified immunity analysis because Defendant did not violate any of Plaintiff's Constitutional rights.

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).